UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT TESTA,

                              Plaintiff,

                                                                     <u>DECISION AND ORDER</u>

                                                                         10-CV-6229L

                                v.

LAWRENCE BECKER, as plan administrator of the
Xerox Corporation Retirement Income Guarantee
Plan, and XEROX CORPORATION RETIREMENT
INCOME GUARANTEE PLAN, an Employee
Pension Benefit Plan,

                                Defendants.
_____


**INTRODUCTION**

Plaintiff Robert Testa brings this action against the Xerox Corporation Retirement Income Guarantee Plan ("RIGP") and the administrator of the RIGP, alleging that his pension benefits have been reduced in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*

Plaintiff brought this action in the United States District Court for the Central District of California in January 2010. The action was transferred to this Court in April 2010, based on a forum selection clause that was added to the RIGP in July 2008.

Two motions are now pending before this Court: plaintiff's motion for summary judgment (Dkt. #49) and defendants' cross-motion for summary judgment (Dkt. #53). For the reasons that follow, plaintiff's motion is granted, and defendants' motion is denied.

## BACKGROUND

This is one of several related cases presenting roughly similar claims by current and former employees of Xerox Corporation ("Xerox"). Plaintiff Testa began working for Xerox in 1972, and left in 1983, at which time he took a lump-sum distribution of about $30,000 from the then-existing Profit Sharing Plan ("PSP").

Testa returned to Xerox for a second period of employment, from 1985 to 2008. In 1990, Xerox discontinued the PSP. *See Conkright v. Frommert*, 559 U.S. 506, 524 (2010). When it did so, Xerox merged the PSP into the RIGP. Plaintiff then became a participant in the RIGP.

When Testa finally retired from Xerox in 2008, defendants calculated his benefit utilizing a so-called "phantom account" offset. That offset involves defendants' deduction from a participant's pension benefit, not only of the amount of the lump sum that the participant received when he first left Xerox, but also a sum representing the hypothetical interest that the lump sum would have earned had it remained in the pension plan until the employee's retirement at the end of his final period of employment with Xerox. *See Frommert v. Conkright*, 433 F.3d 254 (2d Cir. 2006) (explaining the details of the phantom account).

On or about January 13, 2009, Testa received a "pension calculation statement," setting forth the amount of his pension benefit, as determined by defendants. For the purposes of this Decision and Order, the details of that calculation are not important, but what is important is that defendants utilized the phantom account offset. Plaintiff alleges that his pension benefit, following his final period of employment, is significantly lower than it should be, due to the application of the phantom account offset.

Some of the relevant correspondence does not seem to be in the record, but it is referred to by the parties, and the substance of that correspondence is not in dispute. It appears that on or about January 30, 2009, Testa sent a letter to the Xerox Benefits Center, raising his objections to Xerox's calculation of the amount of his benefit. Apparently Xerox's response was not to

plaintiff's liking, because he sent them another letter dated May 26, 2009, in which he sought to appeal what he characterized as Xerox's denial of his claim for additional benefits.

By letter dated June 2, 2009, Arlyn Kaster (described as "Mgr. Pension and Life Ins. Benefits"), responded to plaintiff. Kaster stated that Testa's January 30 letter had not been submitted in accordance with prescribed procedures, and hence would not be treated as a formal claim. Kaster added that Xerox would construe Testa's May 26 letter as a claim, but without waiving any defenses that Xerox might have in any future lawsuit, including the defense that Testa's claims were time-barred. Dkt. #52-3 at 10.

Kaster informed Testa that Xerox had determined that Testa was not entitled to any additional benefits, because Testa was not a plaintiff in the *Frommert* action (which was commenced in 2000) or in any other litigation concerning the phantom account. *See* Dkt. #52-3. By letter to plaintiff dated August 4, 2009, Plan Administrator Lawrence Becker essentially affirmed that ruling, and stated that "[t]his represents a final and binding decision under the Plan ... ." Dkt. #52-3 at 16.

Plaintiff filed this lawsuit in January 2010, in the Central District of California. The action was transferred to this Court in April 2010. The complaint asserted four causes of action, as explained below. A full understanding of this case, however, requires some familiarity with the related cases referenced above, many of which predate this lawsuit.

As indicated in Kaster's letter, this is not the first case stemming from Xerox's use of the phantom account. To the contrary, the phantom account has given rise to much litigation, and numerous reported cases over the years, in this and other courts, including the Supreme Court of the United States *See, e.g.*, *Frommert*, 559 U.S. 506; *Frommert v. Conkright*, 738 F.3d 522 (2d Cir. 2013); *Miller v. Xerox Corp. Retirement Income Guarantee Plan*, 464 F.3d 871 (9th Cir. 2006), *cert. denied*, 549 U.S. 1280 (2007); *Clouthier v. Becker*, No. 08-CV-6441, 2016 WL 245157 (W.D.N.Y. Jan. 21, 2016). At least in this circuit, the primary focus of that litigation has been on defendants' failure to provide plan participants with adequate notice of the existence and

operation of the phantom account. *See Frommert v. Conkright*, __ F.Supp.3d __, 2016 WL 7186489, at *11 (W.D.N.Y. Dec. 12, 2016) ("At its heart, this case has always been primarily about (1) Xerox's application of the phantom account, to employees who were not given clear and adequate notice of its existence and how it was utilized, in violation of ERISA, and (2) how to remedy that violation").

While some issues remain to be resolved in some of these cases, one thing that has been established is that Xerox violated ERISA by applying the phantom account to certain employees, who were inadequately apprised of the phantom account's existence, the fact that it would be applied to them, and the effect that its application would have on the amount of their pension benefits. As this Court recently stated, "If nothing else, this litigation has established that defendants violated ERISA through their application of the 'phantom account' to employees who retired before the existence and operation of that account was fully disclosed in [the summary plan description issued in] 1998, and that plaintiffs who were adversely affected by that inequitable conduct are entitled to relief." *Frommert*, 2016 WL 7186489, at *2 (citing cases).

In the case at bar, plaintiff originally asserted four claims under ERISA. On October 30, 2013, the Court issued a Decision and Order, 979 F.Supp.2d 379, granting defendants' motion to dismiss plaintiff's first, second and fourth causes of action. Those causes of action asserted claims for pension benefits under 29 U.S.C. § 1132(a)(1)(B), and for "other appropriate relief" under § 1132(a)(3).

The Court dismissed those three claims principally on the ground that they were time-barred. *Id.* at 383. Familiarity with that decision is assumed, for purposes of this Decision and Order, but the gist of the decision was that plaintiff could not seek benefits directly under the terms of the plan itself, or under the summary plan description ("SPD"), because Xerox's 1998 SPD had put plaintiff on notice of the existence and operation of the phantom account, when that SPD was issued to and received by him. At the latest, then, plaintiff's six-year limitations period under § 1132(a)(1)(B) expired in 2004. *Id.* The Court added that plaintiff could not simply

recast his claim for benefits in the guise of a catchall fiduciary-duty claim for "other appropriate relief" under § 1132(a)(3).

The Court denied, however, defendants' motion to dismiss the third cause of action, in which plaintiff asserted a claim under 29 U.S.C. § 1132(a)(3), based on his allegation that defendants have refused to comply with controlling court precedent, in violation of their fiduciary duties. In that cause of action, plaintiff seeks an order compelling defendants to comply with the ruling of the Court of Appeals for the Ninth Circuit in *Miller v. Xerox Corp. Retirement Income Guarantee Plan*, 464 F.3d 871 (9th Cir. 2006), *cert. denied*, 549 U.S. 1280 (2007). In *Miller*, the Ninth Circuit held that the phantom-account methodology violates ERISA, and that "[t]he benefit properly attributable to the [prior] distributions is simply the ... annuity amount that those distributions would have provided." *Id.* at 875.[1]

In denying defendants' motion to dismiss this claim as untimely, I stated that "Plaintiff may have been on notice since 1998 of the existence and operation of the phantom account mechanism, but he could not have anticipated, after both the Second and Ninth Circuits disapproved of the use of that mechanism in 2006, that defendants would essentially ignore those rulings, and continue to apply the phantom account, as to anyone who had not won a victory in court." 979 F.Supp.2d at 384. The reference to the Second Circuit was to that court's 2006 decision in *Frommert*, 433 F.3d 254, in which the Second Circuit ruled that Xerox's phantom account mechanism was not properly added to the RIGP until the issuance of the 1998 SPD, and that it would violate § 204 of ERISA for the plan administrator to apply the phantom account to employees rehired by Xerox prior to the issuance of the 1998 SPD.

Plaintiff now moves for summary judgment. He asks the Court to require defendants to pay him benefits based on either the "new hire" methodology adopted by the Court in *Frommert*, or–which is plaintiff's preferred approach–an "actual annuity" formula, which plaintiff contends

---

[1]As explained in my October 2013 decision, *Miller* is of particular relevance here because this case was commenced in the Central District of California, which is in the Ninth Circuit.

is more in line with *Miller*. Those alternatives will be described in more detail below.

Defendants have cross-moved for summary judgment. Defendants do not argue that the plaintiff's sole remaining claim is time-barred, but that the Plan administrator correctly denied it as time barred. The Court addresses defendants' motion first.

**DISCUSSION**

**I. Defendants' Motion**

In an attempt to find a way around this Court's 2013 decision denying their motion to dismiss plaintiff's third cause of action under § 502(a)(3) as untimely, defendants have taken a new tack. They state that they are *not* asking the Court to reconsider that ruling. Instead, they say, they are seeking judgment in their favor on the merits of this claim, because the Plan administrator did not breach his fiduciary duty in the first place. In fact, they claim, the administrator got it right. The reason, defendants state, is that the administrator correctly determined that Testa's *administrative* claim for additional benefits was time barred.

This argument is simply a repackaging of defendants' argument–which the Court has already rejected–that plaintiff's § 502(a)(3) claim is time barred. In effect, defendants state that even if plaintiff's fiduciary-duty claim, asserted in this Court, is not time barred, it is meritless, because the underlying administrative claim was properly denied as time barred.

That is a fine distinction, indeed. The Court understands the distinction, and its fineness alone does not render defendants' argument meritless. But it *is* meritless.

As a preliminary matter, the Court finds inapposite defendants' argument that the Second and Ninth Circuits left the door open for the assertion of individualized defenses. In support of that assertion, defendants note that the Second Circuit, as well as this Court, have permitted the application of the phantom account offset to plaintiffs who waived their ERISA claims by signing releases. *See Anderson v. Xerox Corp.*, 614 Fed.Appx. 38, 39 (2d Cir. 2015); *Frommert*

*v. Conkright*, 535 F.3d 111, 12023 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 506 (2010)); *Clouthier*, 2016 WL 245157, at *2.

This Court does not hold that defendants are precluded from asserting *any* defense as to any claim asserted by a plan participant, related to the phantom account. But that is beside the point. There is an obvious and significant difference between a plaintiff who has knowingly and voluntarily released his claims under ERISA, and a plaintiff who is confronted with a fiduciary's unexpected refusal to apply to him court-issued directives, who acts swiftly to challenge that refusal.

Defendants' argument that the *Frommert* and *Miller* courts "never intended to preclude valid defenses to claims" thus begs the question. Defendants assume that their motion for summary judgment, which is ultimately based on the 1998 SPD, is "valid," even after the court of appeals decisions issued in 2006, disapproving of the application of the phantom account to plan participants rehired prior to 1998. Untimeliness is not a valid defense here, regardless of whether that defense is put forth in terms of the timeliness, or the substance, of plaintiff's § 1132(a)(3) claim.

As stated, then, defendants' contention that they are seeking judgment on the merits of this claim is little more than an attempt to resurrect their previously rejected argument that plaintiff's claim is time barred. Defendants have simply recast that assertion as an argument that the administrator properly denied plaintiff's administrative claim as time barred.

Defendants' argument also ignores a fundamental point that the Court set forth in its 2013 decision. Based on the Court's prior statements, one might reasonably have thought that this issue was dead and buried. But defendants persist in attempting to resuscitate it.

That point concerns the Second Circuit's very precise, explicit directive in *Frommert*, as described by this Court in a related case:

> Notably, the Court of Appeals in *Frommert* did not state that "the phantom account may not be applied to *plaintiffs* rehired prior to the issuance of the 1998 SPD," or that it may not be applied to employees who timely filed suit. The court stated that "the phantom account may not be applied to *employees* rehired prior to the issuance of the 1998 SPD."

> 433 F.3d at 263 (emphasis added). This language was not ambiguous. It could not be any clearer: the phantom account may not be used. It is hard to imagine how anyone could read the Second Circuit's directive and still persist in using the phantom account. This is especially so for a fiduciary.

*Kunsman v. Conkright*, 977 F.Supp.2d 250, 263 (W.D.N.Y. 2013).

If further clarification is needed, the Court will spell it out again. In 2006, the Second Circuit held that the phantom account *may not be applied* to an employee rehired prior to 1998. That same year, the Ninth Circuit in *Miller* did so as well.[2] Plaintiff Testa was rehired prior to 1998, and he finally retired and sought benefits in 2008. In 2009, the Plan administrator issued a decision, as to Testa, that essentially ignored the Second and Ninth Circuit's 2006 proscription of the application of the phantom account to employees rehired prior to 1998. That refusal, by the plan fiduciary, to follow controlling court decisions is what forms the basis of this claim.

Defendants' contention that neither *Miller* nor *Frommert* held that defendants are precluded from asserting individualized defenses to ERISA claims thus misses the mark. This has nothing to do with whether defendants *may* assert individualized defenses, including defenses based on the statute of limitations. The Court finds only that the defense asserted here-- that Testa's fiduciary-duty claim is substantively meritless–is fatally flawed, because the administrator's decision was erroneous and wrongful.

Defendants also argue that the statements by the Second Circuit in *Frommert*, and by the Ninth Circuit in *Miller*, to the effect that defendants may not apply the phantom account to plan participants, are mere *dicta*, and not binding on defendants. The Second Circuit's statement that "the phantom account may not be applied to employees rehired prior to the issuance of the 1998 SPD" hardly sounds like *dictum*, however. To the contrary, it seems like a clear directive.

Finally, lest there be any doubt on this score, I find that plaintiff's third cause of action is timely, and that plaintiff is entitled to relief on this claim. In my 2013 Decision, I stated that

---

[2]Though the Ninth Circuit based its decision on reasoning that differed from the Second Circuit's, it similarly held that "Xerox may not use a projected-to-the-present value generated from a phantom account as a proxy for the actual distribution amount." 464 F.3d at 876.

plaintiff's § 502(a)(3) claim presumably arose no earlier than 2006, but no evidence has been presented to the Court that plaintiff was made aware, more than three years before he filed suit in January 2010, that defendants would refuse to abide by the 2006 directives of the Second and Ninth Circuits. For all that the record shows, it was not made known to plaintiff that his pension benefits would be reduced based on the phantom account (in apparent contravention of the courts of appeals' disapproval of the application of that account) until after his 2008 retirement.

All the evidence in the record indicates that this claim did not accrue until the administrator denied plaintiff's claim in 2009. No additional proof has been presented to the Court indicating that plaintiff was apprised, prior to the denial of his claim in 2009, that the administrator would refuse to apply the *Frommert* holding to Testa or to anyone else who was not a plaintiff in *Frommert*. As has been made abundantly clear, that refusal was unjustified and constituted a breach of the administrator's fiduciary duty to plaintiff. The only question remaining before this Court, then, is the relief to which plaintiff is entitled.

**II. Plaintiff's Motion**

In his motion for summary judgment, plaintiff argues that this Court should, at the least, "apply the *Frommert* result to the *Testa* case." (Dkt. #49-1 at 6.) But plaintiff goes on from there to argue that it would be better for the Court to apply a different remedy, more beneficial to him than that ordered in *Frommert*. Specifically, plaintiff contends that the Court should apply an "actual annuity" approach, if that would result in a monthly benefit more favorable to plaintiff than the new-hire remedy adopted in *Frommert*. Plaintiff adds that his proposed actual-annuity formula would "probably" result in a benefit more generous than the new-hire approach that this Court used in *Frommert*. (Dkt. #49-1 at 8.)

Plaintiff argues that though the Court's "new hire" remedy may address defendants' disclosure violations, it is not adequate to satisfy ERISA's substantive requirements. Plaintiff contends that "ERISA rules allow a RIGP Member's final two-period RIGP 'accrued benefit'

(expressed as an annuity) to be offset only by the similarly-computed (and similarly expressed) RIGP 'accrued benefit' earned by the end of the Member's first period of service." (Dkt. #49-1 at 10.)

Plaintiff's brief elaborates on that argument, but the bottom line is that, according to plaintiff,

> When Mr. Testa left Xerox in 1984, he had earned a RIGP 1.4% formula accrued benefit (expressed as a monthly annuity) of approximately $775. When his full service from both periods of service is considered, that formula accrued benefit was a total of $4,457.96 per month. Very simply, the appropriate offset to this accrued benefit is about $775 per month. That is the benefit to which Mr. Testa is entitled as a matter of law.

(Dkt. #49-1 at 15.)

Plaintiff also acknowledges, in a footnote, that this Court has previously rejected that proposed approach. *See* Plaintiff's Mem. (Dkt. #49-1) at 9 n.5 (citing *Frommert v. Becker*, 153 F.Supp.3d 599, 614-15 (W.D.N.Y. 2016)). Plaintiff goes on at some length to attempt to show why, as a matter of plan interpretation, the Court should adopt his proposed remedy.

Plaintiff is correct in stating that this Court *has* considered, and rejected, his proposed "actual annuity" remedy. Plaintiff states that this Court "briefly" discussed, and rejected the actual-annuity approach, but that dismissive characterization notwithstanding, the Court did set forth its reasons for rejecting that proposed remedy, at some length, in its January 5, 2016 Decision and Order in *Frommert*. 153 F.Supp.3d at 614-15.

I see no need to restate all those reasons here. But as the Court stated in *Frommert*, in adopting the new-hire remedy, the Court "recognize[d] that in fashioning an appropriate equitable remedy, I cannot simply ignore the terms of the Plan altogether, at least insofar as those terms were conveyed to plaintiffs." 153 F.Supp.3d at 615. Considering both the terms of the Plan and the extent of its disclosure to the plaintiffs, the Court found that "[t]he remedy the Court has adopted here [*i.e.*, the "new hire" remedy] strikes [an appropriate] balance ..., by ensuring that plaintiffs are fully, but not overly, compensated for both their periods of service." I reach the same conclusion here.

I also note that the Supreme Court, in its *Frommert* decision, recognized the value of uniformity in interpreting an ERISA plan. *See* 559 U.S. at 520 (expressing concern that some rulings might "well cause the Plan to be subject to different interpretations in California and New York"). While the Supreme Court made those statements in the context of a discussion of the degree of deference that the court should accord to the plan administrator's interpretation of the plan, the underlying principle applies here as well.

In short, there is no reason here to deviate or depart from the remedy that this Court imposed in *Frommert*. Plaintiff is therefore entitled to that same "new hire" remedy, as set forth in the Conclusion to this Decision and Order.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #53) is denied.

Plaintiff's motion for summary judgment (Dkt. #49) is granted. Defendants must take immediate steps to recalculate and pay plaintiff benefits, both prospectively and retroactively, according to the "new hire" formula set forth in this Court's Decision and Order in *Frommert v. Becker*, 00-CV-6311 (Dkt. #283), issued on January 5, 2016.

Defendants' award of additional benefits to plaintiff must also include prejudgment interest, in accordance with the formula set forth in the Court's May 4, 2017 Decision and Order in *Frommert v. Conkright*, 00-CV-6311 (Dkt. #347).

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 9, 2017.