UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT TESTA,

                            Plaintiff,

                                                                 <u>DECISION AND ORDER</u>

                                                                   10-CV-6229L

                            v.

LAWRENCE BECKER, as plan administrator of the
Xerox Corporation Retirement Income Guarantee
Plan, and XEROX CORPORATION RETIREMENT
INCOME GUARANTEE PLAN, an Employee
Pension Benefit Plan,

                            Defendants.
_____

**INTRODUCTION**

On May 9, 2017, the Court issued a Decision and Order (Dkt. #57) granting certain relief to the plaintiff, Robert Testa, in this case arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.* 2017 WL 1857384. For purposes of this Decision and Order, familiarity with that decision, which sets forth the factual background of this case, is presumed.

The gist of the Court's order was that defendants--the Xerox Corporation Retirement Income Guarantee Plan ("RIGP") and the administrator of the RIGP--had to "take immediate steps to recalculate and pay plaintiff [retirement] benefits, both prospectively and retroactively, according to the 'new hire' formula set forth in this Court's Decision and Order" in a related case, *Frommert v. Becker*, 00-CV-6311, which was issued on January 5, 2016. *See Frommert*,

153 F.Supp.3d 599. The Court also directed that the award of additional benefits to Testa had to include prejudgment interest, also in accordance with the formula set forth in *Frommert*.

Both plaintiff and defendants have appealed from that Decision and Order to the Court of Appeals for the Second Circuit. *See* Dkt. #61, #63. The reason for the plaintiff's appeal was that the relief ordered by this Court differed from the specific relief that plaintiff sought. The appeals are currently pending before the Second Circuit.

Plaintiff Testa has moved for an award of attorney's fees, pursuant to 29 U.S.C. § 1132(g) and Fed. R. Civ. P. 54, in the amount of $148,799 in fees and $689.32 in costs. That award would be for work performed by three attorneys, John Strain, Amber Ziegler, and Shaun Martin, all of whom were attorneys of record in the *Frommert* case as well. Defendants oppose plaintiff's motion, and assert that it should either be denied outright or that the amount of fees awarded should be substantially–if not drastically–reduced from what plaintiffs seek.

## DISCUSSION

### I. Attorney's Fee Awards Under ERISA

ERISA's fee-shifting statute provides that "the court in its discretion may allow a reasonable attorney's fee and costs ... to either party." 29 U.S.C. § 1132(g)(1). "It is well-established that 'Congress intended the fee provisions of ERISA to encourage beneficiaries to enforce their statutory rights.'" *Donachie v. Liberty Life Assurance Co. of Boston*, 745 F.3d 41, 45-46 (2d Cir. 2014) (quoting *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009)). *See also Locher v. Unum Life Ins. Co. of America*, 389 F.3d 288, 298 (2d Cir. 2004)

("ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating retirement rights") (quoting *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 872 (2d Cir. 1987)).

In that regard, the Second Circuit has explained that "in light of the ERISA fee provision's 'statutory purpose of vindicating retirement rights,' granting a prevailing plaintiff's request for fees is appropriate absent 'some particular justification for not doing so.'" *Donachie*, 745 F.3d at 47 (quoting *Locher*, 389 F.3d at 298, and *Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan*, 718 F.2d 515, 523 (2d Cir. 1983)).

As explained by the Supreme Court, § 1132(g)(1) allows a court, in its discretion, to award fees and costs to either party, "as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). The *Hardt* Court stated that an attorney's fee claimant

> does not satisfy that requirement by achieving trivial success on the merits or a purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue.

*Id.* at 255 (internal quotes and alterations omitted).

Thus, where a party has achieved some degree of success on the merits, the Court may conclude that an award of attorney's fees is appropriate. *Donachie*, 745 F.3d at 46. *See also Scarangella v. Group Health, Inc.*, 731 F.3d 146, 151, 152 (2d Cir. 2013) (stating that "ERISA does not contain a prevailing party standard and instead provides district courts with broader discretion in determining when and to whom attorney's fees should be awarded," and that "[t]he

Supreme Court in *Hardt* appears to have left room for many factual scenarios to satisfy the standard of some success on the merits").

In addition to whether the fee applicant has obtained some degree of success on the merits (which the court *must* consider) the court may also consider the five so-called *Chambless* factors:

> (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Donachie*, 745 F.3d at 46 (citing *Hardt* and *Chambless* ). While the weight to be given to those factors may differ from one case to another, a "court cannot selectively consider some factors while ignoring others." *Id.* at 47.

When a prevailing party has moved for attorneys' fees while an appeal is pending, the district court has discretion to "rule on the claim for fees, [to] defer its ruling on the motion, or [to] deny the motion without prejudice" until after the appeal has been resolved. *See* Fed. R. Civ. P. 54, 1993 Advisory Committee's Notes. *See*, *e.g.*, *Stevens v. Rite Aid Corp.*, No. 13-CV-783, 2016 WL 6652774, at *2 (N.D.N.Y. July 6, 2016) ("A review of the Second Circuit docket indicates that briefing is still being performed. That being the case, the Court elects to exercise its discretion and decide the matter on the current record"). *See also Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, 09-CV-6043, 2014 WL 1404902, at *1 (W.D.N.Y. Apr. 10, 2014) (Rule 54(d) "permits the court, where appropriate, to make a quick resolution of the fee motion so that any appeal of that issue might be consolidated with an appeal of the merits").

**II. Application to this Case**

Defendants appear to concede that, at least at this stage of the case, plaintiff has achieved enough success on the merits to entitle him to an award of fees. Defendants argue that "[p]laintiff's fee application should be denied in the event that Defendants are successful on their appeal," and that "[e]ven if [defendants] are not successful on their appeal, [plaintiff's] fee application should be substantially reduced for efforts made in litigation that were not successful ... ." Dkt. #66-1 at 6. Defendants also contend that "of the remaining fees and costs sought, this Court should substantially reduce the fees" still further, on a number of grounds. *Id.*

This Court recently denied defendants' motion for an order staying enforcement of my May 9 Decision and Order in this case pending the outcome of the parties' appeals. *See* Dkt. #71. In doing so, the Court found that defendants had not demonstrated a substantial possibility of success on appeal, and had not shown that they would be irreparably harmed absent a stay. *Id.* at 2.

In a similar vein, the Court will proceed to decide plaintiff's motion for attorney's fees, notwithstanding the pendency of the appeals. Plaintiff has achieved success on the merits, and the possibility that defendants might eventually prevail on appeal is not in itself a sufficient reason to deny him a fee award. *See International Ass'n, Local 75*, 733 F.2d 656, 658 (9th Cir. 1984) ("a district court retains the power to award attorney's fees after a notice of appeal from the decision on the merits has been filed"); *Lyon v. Kimberly Clark Corp. Pension Plan*, Civ. No. 05-3201, 2007 WL 1852215, at *1 (D.N.J. June 26, 2007) (finding "no reason why a pending appeal alone should constitute sufficient grounds for this Court to deny Plaintiff's motion" for attorney's fees). If defendants mean to suggest that the Court should wait until the appeals are

decided, then, that request is denied.

With respect to the substance of defendants' arguments, defendants first argue that plaintiffs' reliance on the Second Circuit's decision in *Chambless* is misplaced, because, according to defendants, *Chambless* was abrogated by the Supreme Court in *Hardt*. But that is overstating the matter. The *Chambless* factors are no longer mandatory, in the wake of *Hardt*, but they remain appropriate for consideration.

Prior to *Hardt*, the law in this circuit was that courts were required to consider the *Chambless* factors, when deciding a motion for attorney's fees. *Hardt* simply held that "whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." *Donachie v. Liberty Life Assurance Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014) (citing *Hardt*, 560 U.S. at 255). "*Hardt*, however, did 'not foreclose the possibility that once a claimant has satisfied this requirement, and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors' outlined in *Chambless*." *Scarangella v. Group Health, Inc.*, 678 Fed.Appx. 7, 9-10 (2d Cir. 2017) (quoting *Hardt*, 560 U.S. at 255 n.8). *See also Donachie*, 745 F.3d at 46 ("*Hardt* ... made clear that courts retain discretion to 'consider [the *Chambless*] factors ... in deciding whether to award attorney's fees'") (quoting *Hardt*, 560 U.S. at 255 n.8).

Many of defendants' other arguments, or very similar arguments, were raised by defendants, and rejected by this Court, in *Frommert*. On December 12, 2016, this Court issued a Decision and Order in *Frommert*, awarding attorney's fees to the plaintiffs in that case, following the Court's prior decision granting relief to the *Frommert* plaintiffs. 223 F.Supp.3d 140. As stated, the relief awarded to Testa is essentially identical to that awarded to the plaintiffs in

*Frommert*.

To a great extent, the Court's attorney's fee decision in *Frommert* addresses the arguments raised here. The Court will therefore refer to that Decision and Order, insofar as it relates to defendants' current arguments in this case. I will address defendants' specific arguments here, to the extent that they are based on the particulars of this case. But if the Court's references to *Frommert* seem frequent or extensive, that is mostly a reflection of the similarity between defendants' arguments here and in *Frommert*.

In opposition to plaintiff's motion for attorney's fees, defendants argue that plaintiff's fee award should be substantially reduced because three out of his four claims have been dismissed. But as stated in *Frommert*, the Court should avoid "artificially segmenting plaintiffs' claims and arguments ... ." 223 F.Supp.3d at 147. Determining whether plaintiff is entitled to an award of fees is not a matter of simply tallying up how many claims plaintiff "won" or "lost" on. The Supreme Court has stated that a lawsuit presenting multiple legal theories arising out of a common core of facts "cannot be viewed as a series of discrete claims," and that in deciding whether or to what extent to award attorney's fees in such a case, the court should "focus on the ... overall relief obtained by plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

In the case at bar, Testa obtained significant relief. In effect, he received relief identical to that awarded to the plaintiffs in *Frommert*. And as the Court stated in *Frommert*, the plaintiffs, both in that case and here in *Testa*, "have 'achieved far more than trivial success on the merits or a purely procedural victory.'" 223 F.Supp.3d at 146 (quoting *Hardt*, 560 U.S. at 256) (additional internal quote omitted). Rather, plaintiff has "received a clear, indisputable, and

measurable benefit." *Id.* at 147.

I therefore reject defendants' contention that plaintiff's requested fee award should be reduced, at the very start, by at least 75 percent, to account for his "losing" on three out of four claims. Such a simplistic approach is wholly at odds with the principles that have been set forth by the Supreme Court, and applied countless times by federal courts. The extent to which plaintiff is entitled to an award of attorney's fees should not be reduced to a simple arithmetical formula. The primary question before the Court is whether, on the whole, plaintiff has achieved substantial success on the merits. He has done so.

I also reject, defendants' argument that plaintiff unreasonably pursued claims or theories that this Court had previously rejected. Considering how doggedly defendants have opposed plaintiff's claims, they are hardly in a position to make such an argument. In that regard, certain observations made by this Court in its May 9 Decision and Order are noteworthy.

In that decision, the Court referenced defendants' "attempt to resurrect their previously rejected argument that plaintiff's claim is time barred." Referring to a related matter, concerning defendants' obligations under ERISA, the Court stated that "one might reasonably have thought that this issue was dead and buried. But defendants persist in attempting to resuscitate it." 2017 WL 1857384, at *4. *See also id.* at *5 (stating that "[i]f further clarification is needed, the Court will spell it out again").

As noted in *Frommert*, defendants are certainly entitled, as is any litigant, to advance any reasonable arguments in support of their position. The point is, after all that has transpired in this litigation, much of which was occasioned by defendants' own actions, they are in a poor position to complain that plaintiff's counsel over-litigated this case. In any event, I do not believe that

plaintiff unreasonably pursued claims or arguments that were obviously going to prove fruitless.

Nor do I assign much weight to the fact that plaintiff asked for more than he ultimately got, in terms of relief. Defendants note that plaintiff sought a remedy–an "actual annuity" offset–that would have been more favorable to him than the "new hire" formula imposed by the Court. *See Testa*, 2017 WL 1857384, at *6 (explaining differences between the two approaches); *Frommert*, 153 F.Supp.3d at 614-15 (W.D.N.Y. 2016) (same). The Court has previously set forth its reasons for choosing the "new hire" remedy, *see id.*, but the relief awarded was hardly insubstantial.

Had plaintiff prevailed only on one narrow issue, or obtained very limited relief, or a "purely procedural victory," that might well affect the calculus here. But that is not what happened. Litigants frequently, and understandably, pursue a "best case scenario" result. In other words, they ask for best result that they can reasonably hope to get. An attorney might well be remiss if he failed to do otherwise. That a litigant ends up with something less than that is not in itself a reason to take an axe to a prevailing litigant's fee request, or to discount the extent of the relief awarded. *See Frommert*, 223 F.Supp.3d at 156 ("That this Court ... did not adopt wholesale every argument or proposal advanced by plaintiffs does not mean that plaintiffs have achieved merely 'partial' success").

With respect to the attorney time for which fees should be awarded here, the Court again refers to its fee decision in *Frommert*, in which defendants raised many of the same arguments that they do here. For example, defendants' contention that plaintiff's attorneys' request is rife with vague, excessive and unreasonable time entries is almost identical to an argument they advanced in *Frommert*. Similarly, defendants argue here that plaintiff's counsel's attorneys have

used improper "block billing" entries, in other words, unspecific descriptions of the work performed.

The time entries are obviously different in this case and in *Frommert*, but to a great extent, defendants' arguments are the same. Defendants assert, for example–as they did in *Frommert*–that plaintiff's attorneys have billed "vague" entries for drafting the complaint and other filings, and for reviewing various documents. The Court has reviewed plaintiffs' counsel's time entries, and I disagree with defendants' characterization of, and objections to them.

Many of the time entries of which defendants complain relate to drafting or revising particular briefs. *See* Def. Mem. (Dkt. #66-1) at 10-11. As to those entries, defendants mostly complain that plaintiff's counsel did not record the minutiae of the time they spent on various tasks, breaking down into minutes time spent on discrete issues. But to expect that level of detail "is hardly reasonable or realistic." *Frommert*, 223 F.Supp.3d at 155. To go into the sort of detail that defendants demand would needlessly require the expenditure of even more time, and would hardly be consistent with the exercise of sound "billing judgment."

Some of the time entries that defendants cite as examples of "vague" entries use abbreviations, the meanings of which are not always stated, but which seem reasonably apparent. For example, references to "JS" presumably refer to attorney John Strain. "EM" may safely be assumed to mean e-mail, "TC" to mean telephone conference, and so on. In addition, a handful of entries appear to be incomplete, or abbreviated. For example, Shaun Martin's records contain an entry dated June 16, 2010, for 0.7 hours, described as "Review final Testa opposition brief and EMs JS re: strategy and." But such entries are relatively few, and short in duration, and provide enough of a description to allow the Court to assess their overall reasonableness.

I reach the same conclusion regarding defendants' "block billing" arguments, which are essentially a variation of their "vagueness" arguments. "Block billing"–*i.e.*, "the practice of aggregating multiple tasks into one billing entry"–is disfavored, because it "can make it exceedingly difficult for courts to assess the reasonableness of the hours billed." *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010). But "[w]hile block-billing is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited in this Circuit as long as the Court can determine the reasonableness of the work performed." *Infinity Headwear & Apparel v. Jay Franco & Sons*, No. 15-CV-1259, 2017 WL 4402541, at *8 (S.D.N.Y. Oct. 2, 2017) (internal quote omitted).

"[B]lock billing is most problematic where large amounts of time (e.g., five hours or more) are block billed" because it "meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent." *Beastie Boys v. Monster Energy Co.*, 112 F.Supp.3d 31, 53 (S.D.N.Y. 2015). Although defendants have identified a few entries for multiple tasks, such entries represent a small fraction of the overall time claimed.[1] Given the overall reasonableness of the time claimed by plaintiff's attorneys, I do not believe that these occasional instances of what is arguably block billing warrant any reduction of the fee award.

Defendants also contend that no fees should be awarded for attorney Shaun Martin because he is not an attorney of record in this case. Martin is admitted to practice in this district, and he has appeared, and performed work for plaintiffs in two related cases, *Frommert* and *Kunsman v. Conkright*, 08-CV-6080. In support of plaintiff's fee application in the case at bar,

---

[1]For example, on October 13, 2016, Amber Ziegler billed 6.5 hours for "Draft and revise Reply; conference with J. Strain; draft TOC and table of authorities; legal research regarding fiduciary breach; cite check; draft and revise Reply; file Reply." Dkt. #59-2 at 23.

Martin has submitted a declaration, with attached time sheets, showing the work he has performed on this case. (Dkt. #59-4.) But defendants are correct that Martin has never formally entered a notice of appearance in this action.

That fact, however, does not preclude plaintiff from recovering fees for work that Martin performed in this case. Courts have awarded fees for work performed by lawyers who were neither licensed in the relevant state nor admitted to practice in the relevant district. *See*, *e.g.*, *Doe v. Acupath Labs, Inc.*, No. CV 10-4819, 2015 WL 1293019, at *12 (E.D.N.Y. Mar. 19, 2015) (awarding fees, pursuant to fee-shifting provision of False Claims Act, for work performed by out-of-state attorney who was neither licensed in New York nor admitted in the Eastern District); *Demonchaux v. Unitedhealthcare Oxford*, No. 10 Civ. 4491, 2014 WL 1273772, at *6-*7 (S.D.N.Y. Mar. 27, 2014) (awarding fees under ERISA's fee-shifting provision for work performed by attorney who worked under direction of an attorney who had been admitted *pro hac vice*). *See also Lentz v. City of Cleveland*, No. 04 CV 669, 2011 WL 5360141, at *10-*12 (N.D. Ohio Nov. 7, 2011) (awarding fees for work performed by attorney who would have been permitted to appear *pro hac vice*, had she applied).[2]

That leaves only the hourly rate to be considered. Plaintiff seeks hourly rates of $425 for John Strain, $290 for Amber Ziegler, and $575 for Shaun Martin. The rates for Strain and

---

[2]Some courts have drawn a distinction between fees for non-admitted "consulting" attorneys (which are generally compensable) and fees for "lead" or "active" attorneys, who performed significant work on a case without having been admitted in the relevant district (which are generally not). *See*, *e.g.*, *Gsell v. Rubin and Yates, LLC*, 41 F.Supp.3d 443, 447-452 (E.D.Pa. 2014) (declining to award fees for work performed by out-of-state attorney who was never admitted, even *pro hac vice*, and whose time records showed that he "actively participated" and performed most of the work in the case). But as stated, Martin is admitted in this district. He simply never formally appeared in this action, though he is an attorney of record in some of the related Xerox ERISA cases, including *Frommert*. *See Frommert*, 00-CV-6311, Dkt. #250.

Ziegler represent an increase over what the Court awarded them in *Frommert* ($385 and $225, respectively), but those increases are largely attributable to the time gap between the two cases. Defendants do not appear to challenge the hourly rates requested, and I will apply those rates.[3]

The Court therefore grants plaintiff's motion for an award of attorney's fees, as follows:

| Attorney | Hours | Hourly Rate | Subtotal |
|---|---|---|---|
| John Strain | 177.7 | $425 | $75,522.50 |
| Amber Ziegler | 104.15 | $290 | 30,203.50 |
| Shaun Martin | 74.8 | $575 | 43,010 |
| | | **Total** | $148,736.00 |

The Court also awards plaintiff's request for costs in the full amount requested, $689.32. That brings the total award to $149,425.32.

**CONCLUSION**

Plaintiff's motion for attorney's fees and costs (Dkt. # 59) is granted. Plaintiff is awarded

---

[3]After the fee motion was filed, Strain submitted a supplemental declaration (Dkt. #69-1) seeking fees for an additional 2.5 hours spent by him in connection with the fee motion. The Court will award fees for that time, as well as for the 7.6 hours by Ziegler and one hour by Martin, but I will deny Strain's request to use a higher hourly rate of $450 for his 2.5 hours. That request is apparently based on a recent increase in the rate he charges his clients. The Court will use the same hourly rates applied to the rest of plaintiff's fee request.

attorney's fees in the amount of $148,736.00, and costs in the amount of $689.32, for a total award of $149,425.32. Defendants are hereby directed to pay that amount to the Law Offices of John A. Strain, P.C. within thirty (30) days after the date of entry of this Decision and Order.

IT IS SO ORDERED.

Dated: November 6, 2017
Rochester, New York

_____
DAVID G. LARIMER
United States District Judge